UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CIVIL ACTION NUMBER: 2021cv00625

DEWARREN JOHNSON, an individual,

Plaintiff,

v.

ELITE TRANSPORTATION, LLC, a Kansas corporation,

Defendant.

## COMPLAINT

Plaintiff DeWarren "Warren" Johnson, by his undersigned attorneys, states as follows for his Complaint against Defendant Elite Transportation, LLC:

### INTRODUCTION

1. This action arises primarily from Elite Transportation, LLC, expressly and openly terminating Warren Johnson's employment, because he refused to illegally operate an unsafe commercial vehicle on the public highways. On a frozen February evening, Elite Transportation took a truck awaiting repairs – a truck with rusted breaks, tampered emissions, and expired tags – placed it in service, and told Warren Johnson to drive it. After inspecting the truck, Mr. Warren gave Elite a list of repairs it needed before it would be safe or legal to drive. Elite's Human Resources and Safety Director responded by offering him in writing an $800 bribe if he agreed to make deliveries in the unsafe vehicle, and instructing him to "tell no one if you decide to" drive the truck. Mr. Johnson refused to

1

operate the unsafe vehicle and turned down the bribe. The next day, Elite fired him, that same director writing: "I tried to tell you not running was not going to go over well. We no choice [*sic*] but to terminate your employment effective today."

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1337.

3. This action arises under Surface Transportation Assistance Act ("STAA"), 49 U.S.C. §31105, and the Colorado Wage Act ("CWA"), Colo. Rev. Stat. §§ 8-4-101, *et seq*. More specifically, this action arises from the conduct of Defendant in:

   a. Retaliating against Plaintiff, including but not limited to by terminating his employment, for engaging in protected activities by opposing federal safety law violations;

   b. Failing to pay Plaintiff earned, vested, and determinable wages at the time of separation from employment, including but not limited to accrued paid time off;

   c. Failing to pay Plaintiff his full wages, including but not limited to making impermissible deductions from pay and failing to pay overtime wages.

4. Venue is proper in this Court, because all actions complained of were carried out within the State of Colorado, and Plaintiff was employed by Defendant in the State of Colorado.

5. Plaintiff has met all procedural pre-requisites for, and has timely filed, this Complaint pursuant to the STAA.

## GENERAL ALLEGATIONS

**The Parties**

6. Plaintiff Warren Johnson is a former employee of Defendant, who Defendant assigned

to operate commercial motor vehicles on highways within the state of Colorado.

7. Defendant Elite Transportation, LLC is a privately-held Kansas limited liability company with its principal place of business in Wichita, Kansas. Defendant owns and leases commercial motor vehicles in connection with its primary business of providing distribution and delivery services.

**Overview**

8. Mr. Johnson first began driving delivery trucks in 2013.

9. In October 2017, Defendant hired Mr. Johnson to drive its delivery trucks and tractor-trailers.

10. Initially, Mr. Johnson was assigned to routes making local deliveries in and around Aurora, CO.

11. In October 2018, in addition to his local delivery routes, Defendant assigned Mr. Johnson to drive a roundtrip delivery route between Aurora, CO and Lamar, CO.

12. Throughout the period of Mr. Johnson's employment, Defendant failed to maintain its fleet vehicles in safe condition.

**Defendant Tried to Bribe and then Terminated Mr. Johnson for Refusing to Drive an Unsafe Commercial Motor Vehicle**

13. In February 2020, because it had no legally operable commercial motor vehicles of its own in Colorado, Defendant provided Mr. Johnson with a rented truck in which to complete his delivery routes.

14. On or about February 11, 2020, while Mr. Johnson was completing deliveries in the rented truck, it was repossessed.

15. Mr. Johnson immediately contacted Defendant's Human Resources and Safety

Director, Crystal McCullough, informed Defendant of the repossession, and requested access to another vehicle to complete his delivery routes.

16. Mr. Johnson was scheduled to complete a delivery "run" roundtrip between Aurora and Lamar that week.

17. The Aurora-Lamar route required Mr. Johnson to travel along Interstate 70, U.S. Route 287, and U.S. Route 50.

18. During the relevant time period, the weather conditions along the Aurora-Lamar route had generally been freezing, with precipitation including ice and snow.

19. On or about February 13, 2020, Ms. McCullough informed Mr. Johnson that one of Defendant's tractors had been delivered to the Lanter office in Aurora, for his use (the "Elite Tractor").

20. The Elite Tractor was a self-propelled vehicle used on the highways in commerce principally to transport cargo with a gross vehicle weight rating or gross vehicle weight of more than 10,001 pounds. Thus, it was a commercial motor vehicle subject to the STAA. 49 U.S.C. 31101(1).

21. Defendant had previously determined that the Elite Tractor was inoperable. Immediately preceding its delivery to Aurora, the Elite Tractor had been in Defendant's mechanic bay awaiting critical repairs.

22. As is required by law and his routine, Mr. Johnson first conducted a visual inspection of the Elite Tractor. Through his inspection, Mr. Johnson determined that the Elite Tractor was in such disrepair that it could not be safely or legally operated.

23. Mr. Johnson provided photos and details to Defendant's CEO (Kendal Lindquist), Human Resources and Safety Director (Crystal McCullough), and Dispatch Center Manager (Jeremy, last name unknown), showing the defects that needed to be remediated before the tractor could be

operated safely and legally.

24. Mr. Johnson wrote to Defendant's CEO, Kendal Linquist: "That tractor you guy's [*sic*] sent out here is not in the best of shape and that is being nice about this whole situation." Exhibit 1.

25. Through text messages, photographs, and phone calls, Mr. Johnson informed Defendant that numerous conditions made the Elite Tractor unsafe and illegal to operate, including but not limited to:

   a. Severely corroded brakes;

   b. Expired International Fuel Tax Agreement tags;

   c. No heat in the cab;

   d. A disconnected DPF/DEF emissions system, causing emissions to flow into the cab; and

   e. Deceptive alterations to the DPF/DEF emissions system monitor, to give the appearance that it was running despite being disconnected. *Id. See also* Exhibit 2.

26. The type of alterations made to the DPF/DEF emissions system are a common industry "trick," used to avoid performing regular, required maintenance of the system filter. Weigh stations inspectors looks for these as a matter of course. If a tractor is found to have such alterations, it cannot be operated again until the system is repaired and must be towed from the inspection site.

27. Mr. Johnson made clear to Defendant that he could not drive the tractor without violating the Federal Motor Carriers Safety Administration's (the "FMCSA") Compliance, Safety, Accountability ("CSA") standards, and that if he attempted to do so, the Elite Tractor would be pulled off the road for those violations. Exhibit 1.

28. Mr. Johnson called Jeremy, the manager of Defendant's dispatch center, and they discussed the extensive repairs needed to make the Elite Tractor legally operable.

29. Jeremy (LNU) acknowledged that the DPF/DEF alterations were illegal and that Defendant's technicians had made the alterations despite his explicit instructions to the contrary.

30. Upon information and belief, an employee or officer of Defendant with higher authority than Jeremy directed the technicians to make those alterations.

31. When Mr. Johnson refused to operate the Elite Tractor in its dangerous condition, Defendant informed Mr. Johnson that it had no other trucks or tractors available for his use.

32. Over the course of several phone calls, Ms. McCullough made clear to Mr. Johnson that Defendant wanted the delivery completed, regardless of the Elite Tractor's condition.

33. Then, Ms. McCullough texted Mr. Johnson two photos with the message: "Something to think about? We have no choice and I'll pay you $800 to run. Don't tell no one if you decide to." Exhibit 3.

34. One of the photos showed an $891.50 check written by Defendant to Mr. Johnson, dated February 13, 2020. *Id.*

35. The second photo showed a USPS tracking number for a mailing originating in Wichita, Kansas (Defendant's office) and destined for Aurora, Colorado (Mr. Johnson's home). *Id.*

36. Immediately following the bribe offer, Mr. Johnson called Ms. McCullough. When they spoke on the phone, Mr. Johnson declined the bribe to drive the Elite Tractor.

37. Mr. Johnson tried to find a replacement tractor to use for his Aurora-Lamar route, but was not successful.

38. Mr. Johnson informed Defendant that he was returning to his nearby home, due to the freezing temperatures and inoperability of the Elite Tractor.

39. Later that night, Ms. McCullough asked Mr. Johnson to give the keys to the Elite Tractor to another employee. She told him: "PLEASE do not speak to anyone there just leave the keys in the truck." *Id.*

40. Mr. Johnson returned to where the Elite Tractor was parked, but the other employee(s) had already left. He left the keys in the truck, as instructed.

41. At no point did Defendant dispute that the condition of the Elite Tractor made it unsafe or illegal to operate. Rather, Defendant's managers and officers implicitly and explicitly acknowledged that the Elite Tractor was both unsafe and illegal to operate.

42. The next day, February 14, 2020, Mr. Johnson asked whether he should report to the loading location to complete the Aurora-Lamar delivery route. *Id.*

43. In response, Defendant terminated Mr. Johnson:



44. Mr. Johnson's refusal to complete the Aurora-Lamar delivery route in the Elite Tractor was the reason for his termination. *Id.*

45. On or about February 13, 2020, Defendant caused another employee to attempt the Aurora-Lamar delivery route in the Elite Tractor.

46. The Elite Tractor suffered a catastrophic mechanical failure en route. *See* Exhibit 4.

47. Defendant's claim that it lost the Aurora-Lamar delivery route contract as a result of Mr. Johnson's refusal was a fabricated pretext for his termination.

48. Shortly after Mr. Johnson's termination, in March 2020, Defendant posted a job opening for Mr. Johnson's position, including the Aurora-Lamar delivery route.

49. Since Mr. Johnson's termination, Defendant has continued to operate the Aurora-Lamar delivery route.

50. On or about March 10, 2020, Mr. Johnson timely filed a whistleblower complaint, pursuant to the STAA, with the Occupational Safety and Health Administration ("OSHA"), alleging that he was terminated in retaliation for complaining about and opposing the violation of a commercial motor vehicle safety or security rule.

51. More than 210 days have passed since the filing of Mr. Johnson's whistleblower complaint, without the issuance of a final decision.

52. Pursuant to OSHA procedure, Mr. Johnson will notify OSHA of the filing of this action within seven days.

**Defendant Failed to Fully Compensate Mr. Johnson Throughout his Employment**

53. Originally, Defendant hired Mr. Johnson in October 2017 to drive deliveries in and around the greater Aurora, Colorado area.

54. When Mr. Johnson began working for Defendant, Defendant provided him with approximately 5 basic polo shirts with its logo and 3 pairs of pants.

55. Soon after his employment began, Mr. Johnson noticed a $10 deduction from his weekly pay labeled "Uniform." Exhibit 5.

56. Mr. Johnson asked Ms. McCullough why Defendant was deducting a weekly uniform fee from his pay. Without further explanation, she informed Mr. Johnson that Defendant would stop the taking the deduction from his pay.

57. Despite this, Defendant continued to deduct the $10 "Uniform" fee from Mr. Johnson's weekly pay through his termination.

58. In or about October 2018, Defendant assigned Mr. Johnson to complete the Aurora-Lamar roundtrip route in addition to his local deliveries.

59. From October 2018 until his termination in February 2020, Mr. Johnson worked approximately 14 hours per day, 5 days per week — a 70-hour workweek.

60. From October 2018 until his termination in February 2020, Defendant paid Mr. Johnson a $2,100 weekly flat rate.

61. From October 2018 onward, Defendant did not pay Mr. Johnson overtime wages for hours worked in excess of 40 per week.

62. According to its employee handbook, Defendant's employees begin accruing paid time off ("PTO") on the first anniversary of their employment. Exhibit 6.

63. Upon information and belief, under the policy, PTO accrues at a rate of 1 day per month and Defendant has no policy limiting the accrual of PTO.

64. Mr. Johnson did not use any PTO during his employment.

65. Mr. Johnson's paystubs did not accurately reflect his PTO accruals. The PTO accrual indicated would fluctuate at random. From one paystub to the next, the PTO accrual amount would sometimes increase or decrease—by various different amounts. Other times, it would remain stagnant for months at a time.

66. When Mr. Johnson was terminated, Defendant did not pay him all of his accrued PTO.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
(RETALIATION IN VIOLATION OF THE STAA AND WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY)

67. Mr. Johnson incorporates herein all of the foregoing allegations in this Complaint.

68. At all relevant times, Defendant was a "commercial motor carrier" as defined in 29 C.F.R. § 1978.101(d).

69. The Elite Tractor was a "commercial motor vehicle" as defined in 49 U.S.C. 31101(1).

70. At all relevant times, Mr. Johnson was an employee covered by the Surface Transportation Assistance Act of 1982 (STAA), as amended. 29 C.F.R. § 1978.101(h).

71. While employed by Defendant, Mr. Johnson was the driver of a commercial motor vehicle involved in activities directly affecting commercial motor vehicle safety or security.

72. Mr. Johnson opposed the violation of federal and state commercial motor vehicle safety laws and regulations, including, but not limited to: Colo. Rev. Stat. § 42-4-235, 49 U.S.C. §§ 31701-31707, 49 CFR §§ 390.3, 390.6, 309.13, 392.7, 392.66, 393.40, 393.52, 393.83, 396.1, 396.3, 396.7, and 396.13.

73. Defendant terminated Mr. Johnson in retaliation for his opposition to the violation

of commercial motor vehicle safety and/or security rules

74. Defendant's conduct—including but not limited to: trying to bribe Mr. Johnson to violate commercial motor vehicle safety and/or security rules and immediately terminating Mr. Johnson for his refusal to violate commercial motor vehicle safety and/or security rules—shows that it acted willfully, maliciously, wantonly, and/or in reckless disregard for the law and the rights of Mr. Johnson.

75. Mr. Johnson has suffered economic damages as a result of Defendant's conduct.

## SECOND CLAIM FOR RELIEF
(WAGE CLAIM)

76. Mr. Johnson incorporates herein all of the foregoing allegations in this Complaint.

77. Throughout Mr. Johnson's employment, Defendant made improper deductions from his paychecks.

78. From October 2018 until his termination, Defendant failed and refused to pay Mr. Johnson an overtime rate for hours worked in excess of 40 per week.

79. At the time of Mr. Johnson's termination from employment by Defendant, his compensation, in the form of accrued paid time off, were vested, determinable, due, and owing.

80. Defendant has failed and refused to pay Mr. Johnson the compensation he earned during his employment.

81. Mr. Johnson timely made a written demand for payment of his unpaid compensation, as contemplated by C.R.S. 8-4-109, and caused that demand to be delivered to Defendant's address.

82. As of the date of this filing, Defendant still has failed and refused to pay Mr. Johnson the full wages that he earned during his employment with Defendant, which failure was

willful and intentional.

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

1. Back pay and actual damages in an amount to be shown at trial to compensate him for lost wages, benefits, and employment opportunities;

2. Front pay in an amount to be shown at trial, and/or reinstatement;

3. Compensatory and punitive damages;

4. Penalties as provided by the Colorado Wage Act;

5. Reasonable attorneys' fees and costs of this litigation as provided under the Surface Transportation Assistance Act and the Colorado Wage Act;

6. Pre-judgment and post-judgment interest and costs of this action together with reasonable expert witness fees as provided by law;

7. Compensation for taxes incurred; and

8. Such other and further relief as this Court deems necessary and proper.

## JURY TRIAL DEMAND

Plaintiff respectfully requests a jury trial on all questions so triable.

Respectfully submitted this 2nd day of March 2021.

JESTER GIBSON & MOORE, LLP

*s/ Rachel Tumin*
Rachel Tumin, #52500 (CO)
Brian Moore, #28763
rtumin@jgllp.com
bmoore@jgllp.com
1999 Broadway, Ste. 3225

Denver, CO 80202
(303) 377-7888

13